**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**UNITED STATES OF AMERICA,**

**STATE OF NEW YORK, and**

**TUSCARORA NATION,**

          **Plaintiffs,**

     **v.**

                                          **Civil Action No. - - - - - - - - - - - - - -**

**HONEYWELL INTERNATIONAL INC.**

          **Defendant.**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**CONSENT DECREE**

# TABLE OF CONTENTS

I.     BACKGROUND ................................................................................................1
II.    JURISDICTION ................................................................................................4
III.   PARTIES BOUND ...........................................................................................4
IV.  DEFINITIONS...................................................................................................4
V.     GENERAL PROVISIONS ...............................................................................8
VI.   PAYMENTS BY HONEYWELL ....................................................................8
VII.  TRUSTEE-SPONSORED RESTORATION PROJECTS................................10
VIII. CONSERVATION EASEMENTS AND RESTRICTIONS .............................11
IX.   ACCESS AND CER COORDINATORS ........................................................14
X.     FORCE MAJEURE .........................................................................................16
XI.   DISPUTE RESOLUTION ...............................................................................17
XII.  STIPULATED PENALTIES ............................................................................20
XIII. COVENANT AND RESERVATIONS OF RIGHTS BY PLAINTIFFS.........22
XIV. COVENANTS BY CSXT AND HONEYWELL .............................................24
XV.  EFFECT OF SETTLEMENT; CONTRIBUTION PROTECTION ...........................25
XVI. RETENTION OF RECORDS .........................................................................26
XVII. NOTICES AND SUBMISSIONS...................................................................27
XVIII.   RETENTION OF JURISDICTION ............................................................29
XIX. APPENDICES .................................................................................................29
XX.  MODIFICATION .............................................................................................30
XXI. LODGING AND OPPORTUNITY FOR PUBLIC COMMENT.....................30
XXII. SIGNATORIES/SERVICE.............................................................................30
XXIII.   FINAL JUDGMENT .................................................................................31

# I.     BACKGROUND

A.     Plaintiffs – the United States of America ("United States"), on behalf of the Secretary of the United States Department of Interior ("DOI"), the State of New York and the Commissioner of the New York Department of Environmental Conservation (collectively, the "State"), and the Tuscarora Nation  (collectively, "the Plaintiffs") -- have filed a complaint in this action concurrently with this Consent Decree.  The complaint alleges that Defendant Honeywell International Inc. ("Honeywell") is liable to the Plaintiffs under Section 107 of the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended ("CERCLA"), 42 U.S.C. § 9607, for damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss, resulting from the release, or threat of release, of hazardous substances and oil within the portion of the Buffalo River riverine habitat between Lake Erie and just above the confluence of Cazenovia Creek, as well as  the City of Buffalo (the "City") Ship Canal and the Times Beach Confined Disposal Facility, in Buffalo, New York.  These areas are collectively referred to herein as the "Site," as more particularly defined in the definitions section below.

B.     DOI acting through the United States Fish and Wildlife Service ("USFWS"), the Commissioner of Environmental Conservation acting through the New York State Department of Environmental Conservation ("NYSDEC"), and the Tuscarora Nation (collectively, the "Trustees"), under the authority of Section 107(f)(2) of CERCLA, 42 U.S.C. § 9607(f)(2), and 40 C.F.R. Part 300, serve as trustees for natural resources for the assessment and recovery of damages for injury to, destruction of, or loss of natural resources under their trusteeship.

C.     The Trustees share trusteeship of various natural resources allegedly injured as a result of the release of hazardous substances and oil at the Site by multiple potentially responsible parties.

D.     Investigations conducted by the Trustees and the United States Environmental Protection Agency ("EPA") detected hazardous substances and oil in the sediments, soils, and waters of the Site, including, but not limited to, polychlorinated biphenyls ("PCBs"), polycyclic aromatic hydrocarbons ("PAHs"), metals, aniline, and benzene, toluene, ethylbenzene, and xylenes ("BTEXs").

E.     In response to the contamination, the Buffalo River Restoration Partnership, including the EPA, the United States Army Corps of Engineers ("ACE"), NYSDEC, Buffalo Niagara Riverkeeper ("Riverkeeper") and Honeywell developed plans for a comprehensive cleanup of the Site that included two environmental dredging projects.  The first project, Phase 1, begun by ACE in 2011, removed an estimated 372,000 cubic yards of contaminated sediments in the federal navigation channel using funds from the Great Lakes Restoration Initiative.  EPA, the Riverkeeper, and Honeywell entered into a Project Agreement under the Great Lakes Legacy Act ("GLLA") to conduct Phase 2 of the sediment remediation in the Buffalo River ("River"), including certain habitat restoration at the Site.  Work under this Project Agreement included dredging and disposal of

1

approximately 500,000 cubic yards of contaminated sediment outside of the navigation channel, capping 50,000 cubic yards of contaminated sediment, and creation/restoration of eight acres of aquatic habitat in the River. The Trustees considered the value and compensation of this aquatic habitat restoration work in their assessment of natural resource damages at the Site, including mitigation for the remedial dredging work itself.

F.      The Trustees have engaged in natural resource injury studies, damage assessment, and restoration planning relating to the Site since as early as 2004 in accordance with 43 C.F.R. Part 11. In October 2009, the Trustees, Honeywell and Exxon Mobil Corporation ("Exxon") entered into a Cooperative Agreement by which Honeywell and Exxon agreed to participate and provide funding for the performance of a cooperative natural resource damage assessment and restoration process. Eventually, Exxon entered into a separate agreement with Honeywell and withdrew from the Cooperative Agreement. Honeywell continued its cooperative engagement in the natural resource damage assessment and restoration process with the Trustees.

G.      The Tuscarora Nation alleges that the Site area is historically and culturally important to the Tuscarora. For example, as discussed in the Tuscarora Buffalo Creek Restoration Proposal, March 2010, the Site area includes several known points of historic and cultural importance to the Tuscarora including the Seneca Council House, Seneca Indian Academy, and Haudenosaunee grave sites. The Tuscarora claim that, in addition to the direct injuries to natural resources caused by contamination of the River, generations of the Tuscarora people have been prevented from using the River for traditional cultural activities, as a result of the natural resource injuries.

H.      To compensate for the natural resource injury, the Trustees prepared a draft Buffalo River Natural Resource Damage Assessment Restoration Plan and Environmental Assessment ("Restoration Plan") consistent with 43 C.F.R. §§ 11.81 and 11.93, as set forth in Appendix A. The Trustees have invited public comment on the draft Restoration Plan through December 17, 2021.

I.      The Restoration Plan proposes three preferred restoration projects to compensate for natural resource injuries at the Site, including natural resource restoration work on land owned by the City and by CSX Transportation, Inc. ("CSXT"). These preferred restoration projects will occur on (1) identified portions of approximately 43-45 acres of CSXT undeveloped land, bisected by an active railroad line, abutting the River known generally as Concrete Central; (2) identified portions of approximately 7-9 acres of CSXT partially undeveloped land and partially crossed by active rail tracks, and/or side tracks, abutting the City Ship Canal known as the CSXT City Ship Canal Property, and (3) identified portions of approximately 22 acres of the City's undeveloped Houghton Park land abutting the River, together with approximately 3 acres of contiguous undeveloped riverfront City-owned upstream parcels, known as Houghton Park and the Upstream Parcels, respectively. The Restoration Plan proposes these properties for stream bank enhancements, invasive species removal, native plantings, wetland creation, and/or (in certain locations) for recreational enhancements to compensate for lost natural resources and services. The Restoration Plan calls for a conservation easement and

restriction ("CER") to be recorded on these properties to protect the restoration work and prevent the properties' development in perpetuity.  This proposed Consent Decree provides for implementation of all this Restoration Work.

J.    This Consent Decree is structured to provide individual participation by Honeywell, CSXT, and Other Settling Parties as follows:  (1) Honeywell will make those monetary payments set forth in Section VI. ("Payments by Honeywell") and Paragraph 17(a) ("closing costs") herein to reimburse assessment costs and to fund certain Restoration Work according to the Restoration Plan and this Decree; (2)  CSXT will grant CERs for Restoration Work on portions of CSXT's City Ship Canal and Concrete Central Properties (Protected Property), as specified in the Restoration Plan and as substantially set forth in the forms comprising Appendix C.1 and C.2 of this Decree; (3) the Other Settling Parties listed in Appendix B have made payments to Honeywell for cleanup work and natural resource damages at the Site under prior separate settlements with Honeywell but are not signatories to this Consent Decree; (4) Honeywell and/or CSXT are potentially liable for respective stipulated penalties, if any; and (5) the City has separately agreed with Honeywell to execute and to authorize Honeywell to record Trustee-Approved CERs for Restoration Work on portions of certain properties owned by the City, namely the undeveloped portion of Houghton Park and the Upstream Parcels, as specified in the Restoration Plan, and as set forth in the Appendix E (Protected Property). Once the Trustee-Approved CERs are recorded on these City properties, the City will be deemed one of the Other Settling Parties listed in Appendix B.

K.    The City and the Trustees have agreed upon mutually acceptable proposed CERs for the City's property known as the undeveloped portion of Houghton Park, and the Upstream Parcels.  See Appendix E (the "City's CERs").  Upon entry of the Consent Decree and completion of the necessary title work that is currently delayed as a result of the Covid-19 pandemic, the City has authorized Honeywell to record the City's CERs.  Once the City's CERs are recorded, the City will be afforded the same status as, and deemed one of, the Other Settling Parties.

L.    Honeywell does not admit any liability to the Trustees arising out of the transactions or occurrences alleged in the complaint, nor do Honeywell or CSXT admit or endorse any fact and/or conclusion in the Restoration Plan.

M.    The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by them at arm's length, in good faith; that implementation of this Consent Decree will expedite restoration of natural resources allegedly injured and avoid prolonged and complicated litigation among them and the Other Settling Parties; and that this Consent Decree is fair, reasonable, and in the public interest, including furthering the statutory objectives of CERCLA.

 NOW, THEREFORE, it is hereby Ordered, Adjudged, and Decreed:

## II.      JURISDICTION

**1.**      This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1345, and 1367, and 42 U.S.C. §§ 9607 and 9613(b), and over the Plaintiffs, CSXT and Honeywell.  Solely for the purposes of this Consent Decree and the underlying complaint, Plaintiffs, CSXT and Honeywell waive all objections and defenses that they may have to jurisdiction of the Court or to venue in this District. The Tuscarora Nation has sovereign authority over its territory and citizens. Nothing in this Consent Decree shall be deemed to diminish the Tuscarora Nation's sovereignty or to waive the Nation's sovereign immunity. CSXT and Honeywell shall not challenge the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

## III.      PARTIES BOUND

**2.**      This Consent Decree applies to and is binding upon the United States, the State, and the Tuscarora Nation, and upon CSXT and Honeywell and their successors and assigns. Any change in ownership or corporate or other legal status of CSXT or Honeywell, including, but not limited to, any transfer of assets or real or personal property, shall in no way alter the status or responsibilities of such Party under this Consent Decree.

## IV.      DEFINITIONS

**3.**      Unless otherwise expressly provided in this Consent Decree, terms used in this Consent Decree that are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning assigned to them in CERCLA or in such regulations. Whenever terms listed below are used in this Consent Decree or its appendices, the following definitions shall apply solely for purposes of this Consent Decree:

"Active River Area of the Niagara Greenway Municipal Boundary" shall mean the area depicted on page 6 of the Niagara Greenway Habitat Conservation Strategy Phase I Final Report.  Available at https://www.niagararivergreenway.com/copy-of-submit-a-project

"Affected Property" shall mean that limited area on the east side of the CSXT City Ship Canal property not contained within the Protected Property (as depicted in the attachments to Appendix C.2), upon which CSXT is authorizing the Plaintiffs to perform Restoration Work for invasive species control and native plantings.

"CER" or "Conservation Easement and Restriction" shall mean a conservation easement and restriction that satisfies the requirements of the New York State Environmental Conservation Law ("ECL"), Article 49, Title 3, and substantially conforms to the example attached as Appendix C.1 (for the Concrete Central Property) and C.2. (For the City Ship Canal Property) and Appendix E (for the Houghton Park and the Upstream Parcels), which have been determined by Plaintiffs to be acceptable and to satisfy the requirements of the ECL.

"CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601-9675.

"City" shall mean the City of Buffalo, New York.

"City Ship Canal" shall mean the canal that runs approximately 1.4 miles south from the mouth of the Buffalo River parallel to Lake Erie.

"Concrete Central" or "Concrete Central Property" shall mean those portions of the approximately 43-45 acre property, consisting of two separate tax parcels, which collectively are known as the Concrete Central Peninsula, owned by CSXT, located across the River from Red Jacket River Front Park, about 3.2 miles from the mouth of the River, for which a CER covering the Protected Property will be granted for conservation and Restoration Work as generally depicted in Appendix A (Restoration Plan).  The "Concrete Central Property" does not include the western parcel adjacent to the Concrete Central Property which contains the tall concrete structure, commonly called "Concrete Central," and such western parcel and structure are not owned by CSXT.  A map of the CSXT Concrete Central Property is attached as Appendix F.

"Consent Decree" or "Decree" shall mean this consent decree and all appendices attached hereto (listed in Section XIX, Appendices) as well as all plans, reports, or other items or deliverables approved by the Trustees pursuant to this Consent Decree.  In the event of conflict between this Decree and any appendix, plan, report or other item or deliverable, this Decree shall control.

"CSXT City Ship Canal" or "CSXT Ship Canal Property" shall mean those portions of the approximately 7-9 acre parcel of property owned by CSXT adjacent to the City Ship Canal for which a CER covering the Protected Property will be granted by CSXT for conservation and Restoration Work as generally depicted in Appendix A (Restoration Plan).  A map of the CSXT Ship Canal Property is attached as Appendix G.

"Date of Lodging" shall mean the date the proposed Consent Decree is filed with the Court as an attachment to a Notice of Lodging of Consent Decree, pending public comment as required in Section XXI (Lodging and Opportunity for Public Comment).

"Day" or "day" shall mean a calendar day, unless otherwise specified.  In computing any period of time under this Decree, where the last day would fall on a Saturday, Sunday, or federal or State holiday, the period shall run until the close of business of the next working day.

"Designated Paths" shall mean those specific areas on the Ship Canal Protected Property where public access is permitted and directed, such as access between existing public paths to the north and west of the Protected Property.

"DOI" shall mean the United States Department of the Interior and its successor departments, agencies, or instrumentalities.

"DOJ" shall mean the United States Department of Justice and its successor departments, agencies, or instrumentalities.

"Effective Date" shall mean the date upon which the approval of this Decree is recorded on the Court's docket.

"Houghton Park" or "Houghton Park Property" shall mean the property owned by the City for which a CER covering the Protected Property will be provided by the City for

Restoration Work as generally depicted in Appendix A (Restoration Plan), including the approximately 22-acre undeveloped portion of Houghton Park, located along the north bank of the River approximately 7.2 miles from the mouth of the River.

"Interest" shall mean interest at the rate specified for interest on investments of the Hazardous Substance Superfund, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a).  The applicable rate of interest shall be the rate in effect at the time the interest accrues.  The rate of interest is subject to change on October 1 of each year.  Rates are available online at http://www2.epa.gov/superfund/superfund-interest-rates.

"Natural Resource" or "Natural Resources" shall mean land, fish, wildlife, biota, air, water, ground water, drinking water supplies, and other such resources, belonging to, managed by, held in trust by, appertaining to, or otherwise controlled by the United States, the State, or the Tuscarora Nation.

"Natural Resource Damages" shall mean any damages recoverable by the United States, the State, or the Tuscarora Nation, pursuant to Sections 107(a)(4)(C) and 107(f) of CERCLA, 42 U.S.C. §§ 9607(a)(4)(C) and 9607(f), and/or any other federal law, state law, local law, common law or regulation for injury to, destruction of, loss of, loss of use of, or impairment of natural resources, including any services such natural resources provide, resulting from a release of a hazardous substances or oil at, or that migrated to, or was transported to the Site.  Natural Resource Damages include, without limitation:  (i) the costs of assessing injury to, destruction of, loss of, loss of use of, or impairment of natural resources and the resulting damage; (ii) the costs of restoration, rehabilitation, or replacement of injured or lost natural resources and the services they provide, or of acquisition of equivalent resources; (iii) the costs of planning and/or monitoring such restoration activities; (iv) compensation for injury, destruction, loss, impairment, diminution in value, or loss of use of natural resources; and (v) each of the categories of recoverable damages described in 43 C.F.R. § 11.15 and applicable state law.

"Natural Resource Damage Assessment Costs" shall mean, for purposes of this Consent Decree, all costs, including, but not limited to, direct, indirect, and administrative costs, incurred by the Trustees, in assessing the alleged injury to, destruction of, loss of, or loss of use of Natural Resources resulting from releases or threatened releases of hazardous substances or oil at the Site, and all costs incurred by Trustees directly or indirectly related to negotiating this Consent Decree.

"NRDAR Fund" shall mean DOI's Natural Resource Damage Assessment and Restoration Fund established pursuant to 43 U.S.C. §§ 1474(b) and 1474(b)-1.

"Other Settling Parties" shall mean the group comprised of certain parties who, as of the Effective Date, have entered into a settlement relating to Natural Resource Damages with Honeywell, provided that such party is identified in Appendix B (or is the successor in interest to a party listed in Appendix B), and the City, once the City, or Honeywell, has recorded a Trustee-Approved CER on the City's Houghton Park and Upstream Parcel properties in accordance with Appendix E.  CSXT is both a member of the Other Settling Parties and separately bound by its obligations under this Consent Decree.  To the extent

6

that there is any conflict between CSXT's obligations under this Consent Decree and CSXT's status as a member of the Other Settling Parties, its obligations as a signatory to this Consent Decree control.  For avoidance of doubt, CSXT must perform its specific obligations under this Consent Decree, and is otherwise bound by the terms of this Consent Decree, even though it is also included as an "Other Settling Party."

"Paragraph" or "¶" shall mean a portion of this Consent Decree identified by an Arabic numeral or an upper or lower case letter.

"Parties" shall mean the Plaintiffs, CSXT, Honeywell, and the Other Settling Parties. Where distinctions need to be made among the Parties, the terms "Honeywell," "CSXT," and "Other Settling Parties" shall be used.  CSXT is both a member of the Other Settling Parties and separately bound by its obligations under this Consent Decree.  To the extent that there is any conflict between CSXT's obligations under this Consent Decree and CSXT's status as a member of the Other Settling Parties, its obligations as a signatory to this Consent Decree control.  For avoidance of doubt, CSXT must perform its specific obligations under this Consent Decree, and is otherwise bound by the terms of this Consent Decree, even though it is also included as an "Other Settling Party."

"Plaintiffs" shall mean the United States, the State of New York, and the Tuscarora Nation.

"Protected Property" shall mean the portions of any property subject to a CER, including the designated portions of CSXT's Concrete Central and City Ship Canal Properties, and portions of the City's Houghton Park Property and Upstream Parcels.

"Restoration Plan" shall mean the Buffalo River Natural Resource Damage Assessment Restoration Plan and Environmental Assessment ("Restoration Plan"), consistent with 43 C.F.R. § 11.93, and as it may be amended by the Trustees in their discretion.  This Restoration Plan is set forth in this Consent Decree as Appendix A.

"Restoration Work" shall mean the work to be performed under the Decree to restore, replace, enhance, and/or acquire the equivalent of Natural Resources, consistent with the Restoration Plan (Appendix A), including, but not limited to, invasive species control.

"Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

"Site" shall mean the Buffalo River from just above the confluence of Cazenovia Creek to the mouth of the River at Lake Erie (approximately the lower 6.2 miles of the main stem of the River) as well as (1) the City Ship Canal that runs 1.4 miles south from the mouth of the River parallel to Lake Erie, and (2) the Times Beach Nature Preserve and the Times Beach Confined Disposal Facility.

"State" shall mean the State of New York and the Commissioner of Environmental Conservation acting through the New York Department of Environmental Conservation.

"Trustee-Approved CER" shall mean a CER that has been approved by the Trustees for recording under this Consent Decree.

7

"Trustees" shall mean DOI, acting through the FWS, the Commissioner of Environmental Conservation acting through the New York Department of Environmental Conservation, and the Tuscarora Nation, and each department, agency, and instrumentality of the Tuscarora Nation, and any of their respective successors.

"United States" shall mean the United States of America and each department, agency, and instrumentality of the United States, including DOI.

"Upstream Parcels" shall mean the properties owned by the City along the River that are upstream of Houghton Park for which a CER covering the Protected Property will be recorded by the City for Restoration Work, as generally depicted in Appendix A (Restoration Plan).

## V.    GENERAL PROVISIONS

**4.**    **Objectives of the Parties**.  The objectives of the Parties in entering into this Consent Decree are to:  (i) promote restoration, replacement, or acquisition of the equivalent of the natural resources allegedly injured, destroyed or lost as a result of hazardous substance and oil releases at or from the Site; (ii) reimburse natural resource damage assessment costs incurred by the Trustees; (iii) resolve the claims of Plaintiffs against Honeywell, CSXT, and the Other Settling Parties for Natural Resource Damages as provided herein; and (v) avoid further transaction costs and time-consuming litigation.

**5.**    **Compliance with Applicable Law**.  All activities undertaken by, on behalf of, or pursuant to contracts with CSXT or Honeywell pursuant to this Consent Decree shall be performed in accordance with the requirements of all applicable federal, state, and local laws and regulations.

**6.**    This Consent Decree is not, and shall not be construed to be, a permit issued pursuant to any federal or state statute or regulation.

## VI.    PAYMENTS BY HONEYWELL

**7.**    Within thirty (30) days of the Effective Date of this Consent Decree, Honeywell shall pay the Trustees a total of $4,250,000, as follows:

a.    $682,100 for past United States' assessment costs ("Assessment Costs");

b.    $1,355,720 for natural resource habitat restoration projects ("Habitat Restoration Projects");

c.    $606,710 for the Concrete Central Natural Resource Restoration Project;

d.    $277,150 for the Houghton Park Natural Resource Restoration Project;

e.    $179,500 for the CSXT City Ship Canal Natural Resource Restoration Project;

f.    $215,400 for Oversight Costs to oversee completion of the above Projects;

g.    $359,005 for projects to compensate for lost recreational use of natural resources; and

h.    $574,415 for Cultural Restoration Projects and Cultural Assessment Costs.

8.   Payments to be disbursed to the United States:  Payment for items in Sub-Paragraphs 7.a. to 7.f., above, shall be made by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice account, in accordance with instructions provided to Honeywell by the Financial Litigation Unit ("FLU") of the United States Attorney's Office for the Western District of New York after the Effective Date.  The payment instructions provided by the FLU will include a Consolidated Debt Collection System ("CDCS") number, which Honeywell shall use to identify all payments required to be made in accordance with this Consent Decree.  The FLU will provide the payment instructions to:

> Richard Galloway
> Honeywell International Inc.
> 115 Tabor Road
> Morris Plains, New Jersey 07950
> 973-455-4640
> Rich.Galloway@Honeywell.com

on behalf of Honeywell.  Honeywell may change the individual to receive payment instructions on its behalf by providing written notice of such change to the United States and DOI in accordance with Section XVII (Notices and Submissions).

a.   Payment for the United States' Assessment Costs: Payment for the United States' Assessment Costs under paragraph 7.a., above, shall be deposited in the DOI NRDAR Fund to be applied toward natural resource damage assessment costs incurred by DOI.

b.   Payment for Ecological Restoration Projects: The amount paid pursuant to paragraph 7.b. to 7.f., above, for certain joint trustee-sponsored natural resource projects shall be deposited in a segregated sub-account within the NRDAR Fund ("Buffalo River sub-account"), to be managed by DOI for the joint benefit and use of the Trustees to pay for Trustee-sponsored natural resource restoration projects in accordance with Section VII (Trustee-Sponsored Restoration Projects) and the Trustees' Memorandum of Agreement ("MOA," Appendix D).

9.   Payments to be disbursed to New York:  Payment for items in paragraph 7.g., above shall be made by Electronic Fund Transfer to the New York Office of the Attorney General account in accordance with current EFT procedures and instructions provided to Honeywell by the State after the Effective Date. The funds shall be deposited in a segregated sub-account to be managed by NYSDEC for the joint benefit and use of the Trustees to pay for Trustee-sponsored natural resource restoration projects at the Site in accordance with Section VII (Trustee-Sponsored Restoration Projects) and the MOA, attached as Appendix D.  The Attorney General's Office will remit a check payable to **"NYSDEC – Natural Resource Damages Fund"** in the amount of the full initial balance of the account. This check will be mailed to the address below:

> New York State Dept. of Environmental Conservation
> Office of General Counsel
> ATTN: Andrew Guglielmi, Esq.
> 625 Broadway, 14th Floor
> Albany, NY 12233-1500

The check will be deposited in a dedicated sub-account that has been created within the NRD Fund held at the Department of Environmental Conservation.

10.    Payments to be disbursed to the Tuscarora Nation: Payment for items in paragraph 7.h., above, shall be made by Electronic Fund Transfer to the Tuscarora Nation in accordance with current EFT procedures and instructions provided to Honeywell by the Tuscarora Nation after the Effective Date. Such funds shall be applied toward the assessment and restoration of lost, damaged, or injured cultural resources of the Tuscarora Nation.

11.    **Notice of Payment**. Upon making the payments required under Paragraphs 8-10, Honeywell shall send written notice to the United States, New York, and the Tuscarora Nation in accordance with Section XVII (Notices and Submissions). Such notification shall also be sent to:

> Natural Resource Damage Assessment and Restoration Program
> Attn: Restoration Fund Manager
> Mail Stop 3548
> 1849 C Street, N.W.
> Washington, D.C. 20240.

Such notice shall include the following information: the amount of the payment that was made, the case name, "Honeywell – Buffalo River, NY matter," the relevant civil action number, and the DOJ case number 90-11-3-08780.

12.    **Interest**. In the event that any payment required by this Section is not made by the date required, Honeywell shall pay Interest on the unpaid balance through the date of payment. Payments of Interest made under this paragraph shall be in addition to such other remedies or sanctions available to Plaintiffs by virtue of Honeywell's failure to make timely payments under this Section including, but not limited to, payment of stipulated penalties pursuant to Section XII (Stipulated Penalties).

## VII.    TRUSTEE-SPONSORED RESTORATION PROJECTS

13.    **Management and Application of Funds**.

a.    All funds deposited in the segregated Buffalo River sub-account within the NRDAR Fund under Paragraph 8.b. shall be managed by DOI for the joint benefit and use of the Trustees to pay for Trustee-sponsored natural resource restoration efforts in accordance with this Consent Decree, the Trustee MOA (attached as Appendix D), and the Restoration Plan. CSXT, Honeywell, and the Other Settling Parties shall have no responsibility for the performance of any habitat, recreational, or other restoration projects or for the payment of any costs other than those set forth in Section VI and Paragraph 17(a) (which costs shall be paid by Honeywell), and for stipulated penalties, if any.

b.    All funds deposited in the segregated sub-account under Paragraph 9 shall be managed by NYSDEC for the joint benefit and use of the Trustees to pay for Trustee-sponsored natural resource restoration efforts in accordance with this Consent Decree, the Trustee MOA, and the Restoration Plan.

c.   All such funds described in subparagraphs 13.a. and b., above, shall be applied toward the costs of restoration, rehabilitation, or replacement of injured natural resources, and/or acquisition of equivalent resources, including, but not limited to, any administrative, legal, oversight and maintenance costs and expenses necessary for, and incidental to, restoration, rehabilitation, replacement, and/or acquisition of equivalent resources planning, and any restoration, rehabilitation, replacement, and/or acquisition of equivalent resources undertaken.

14.  **Restoration Planning**.  The Trustees prepared a Restoration Plan describing how the funds dedicated for natural resource restoration efforts under this Section will be used in accordance with 43 C.F.R. § 11.93, for restoration, rehabilitation, replacement, or acquisition of equivalent natural resources (Appendix A).  Such natural resource restoration projects include, but are not limited to, Restoration Work, including CERs, for the CSXT Ship Canal and Concrete Central Properties, and the City's Houghton Park and Upstream Parcels Properties, as set forth in the Restoration Plan (Appendix A).  If the Trustees do not or cannot implement any identified restoration project as described in Appendix A, as a result of public comment or otherwise, they may implement any other restoration project(s) that are consistent with the Trustees' restoration objectives as set forth in the Restoration Plan, subject to further public comment, if the Trustees determine further public comment is appropriate, however Honeywell shall have no liability or obligation, including without limitation liability or obligation to pay any costs, with regard to any such additional restoration project(s).

15.  Decisions regarding any use or expenditure of funds from any segregated Buffalo River sub-account under Paragraphs 8.b and 9 that are dedicated for Trustee-sponsored natural resource restoration efforts shall be made by unanimous written agreement of the Trustees, acting through the Trustee Council, pursuant to the MOA, attached hereto as Appendix D.  Neither CSXT nor Honeywell shall be entitled to dispute, in any forum or proceeding, any decision relating to use of such funds or restoration efforts. Nothing in this Paragraph is intended to alter or modify any right, obligation, or limitation on the Trustees' implementation of Trustee-sponsored natural resource restoration efforts under any applicable law, rule, or regulation.

## VIII.  CONSERVATION EASEMENTS AND RESTRICTIONS

16.  The draft CERs contained in Appendix C.1 and Appendix C.2 (the "CSXT CERs") have been determined by the Trustees to be approvable provided they are substantially in the respective forms of Appendix C.1 and C.2.  CSXT shall execute the CSXT CERs within 30 days from the receipt of written agreement by CSXT and the Trustees that the accompanying survey and title work is acceptable.

a.   A list of any prior liens and/or encumbrances as set forth in the title insurance commitments referenced below shall be provided to the Trustees for each property which will be subject to a CER;

b.   If either of the CSXT CERs is not substantially in the form contained in Appendix C.1 or Appendix C.2, it is subject to the approval process set forth in Paragraphs 20-24:

c.  Pursuant to Paragraph 17 below, Honeywell is obtaining a current title insurance commitment which will provide the basis for a title policy to be issued  in accordance with the laws, standards and practices of the State, running to the Grantee of the CER, insuring that the Grantee holds title to the conservation easement (which will cover portions of Protected Property located within the Concrete Central and City Ship Canal Properties), subject to any encumbrances of record, with a copy of any such encumbrances to be provided to the Grantee of the applicable CER.   The title insurance policy shall be provided by a recognized title insurance company licensed to issue such insurance in the State, and coverage shall be in an amount equal to the real estate tax assessment for the applicable properties or another amount agreed to between Honeywell and the recipient of the title policy.  If such foregoing title insurance commitment reveals an encumbrance on title which will interfere with the compensatory and intended purpose of the CER as set out in and limited by each such instrument, CSXT intends to undertake efforts to correct such defect within the exercise of its discretion.  In no circumstances is Honeywell required to address any encumbrances, including without limitation obtaining or paying for  any costs in connection with any efforts to cure defects, including without limitation any subordination agreements.

17.  Honeywell shall be exclusively responsible for

a.  all "Closing Costs" related to the recording of each CER in the Erie County Clerk's Office on portions of CSXT's City Ship Canal and Concrete Central Properties and the City's Houghton Park and Upstream Parcels pursuant to this Consent Decree.  "Closing Costs" consist of and are limited to the costs of any necessary title insurance commitment and related title searches, transfer or recording fees charged by the Erie County Clerk with regard to each CER, and a boundary survey conducted by a licensed surveyor for each Protected Property.  In no event shall Honeywell have any obligation to address or cure any title defects or encumbrances found to exist on the Concrete Central and City Ship Canal Properties or the City's Houghton Park and Upstream Properties.  It is understood and acknowledged by the Parties that in light of the global Covid-19 Pandemic, the ability to conduct title searches necessary to obtain title commitments and title policies has been significantly delayed.  At present, title companies in Buffalo have been unwilling to commit to any timeframes for completing the title searches for each Protected Property.  Honeywell will continue to work in good faith to secure the reasonable services of a qualified title company to perform the title searches, but cannot warrant when such searches and the issuance of title insurance policies will be completed. Honeywell and CSXT are not and shall not be liable for penalties under this Consent Decree for continued delays in the performance of title searches, the inability to obtain issuance of title insurance commitments or policies for each Protected Property, or the inability to record CERs due to delays related to the global Covid-19 Pandemic.

b.  "Closing Costs" do not include the attorneys' fees, consultants' fees, or salaries of the Parties;  the costs paid directly to the Grantee of the CER for the cost of holding the CER in perpetuity, the latter such costs and expenses shall be paid by the Trustees to the Grantee or beneficiary of the CER at the time the CER is recorded; or any other costs not specifically identified in Paragraph 17.a. or b, above.

18. Recording the CERs:

a. CSXT:  No later than sixty (60) days after the respective date of completion of the Restoration Work on each Protected Property owned by CSXT (excluding ongoing invasive species management and other long-term monitoring and maintenance), or other reasonable time period that is agreed upon by the Trustees and CSXT due to the Covid-19 Pandemic, CSXT shall arrange for the recording of the applicable Trustee-approved CER (for which recording costs charged by the Erie County Clerk Honeywell is responsible pursuant to Paragraph 17 above), for each parcel of land that comprises the Protected Property.  CSXT shall deliver proof of such recording, with page and book numbers, to the Trustees, within thirty (30) days of recording.

b. Honeywell:  It is anticipated that no later than within one (1) year of the Effective Date, or other reasonable time period that is agreed upon by the Trustees and Honeywell due to the Covid-19 Pandemic, including allowing reasonable time for a title search to be completed and title insurance to be obtained, Honeywell shall arrange for the recording of the applicable CER, in the form attached as Appendix E to this Consent Decree, for Houghton Park and each of the Upstream Parcels that is subject to Restoration Work. Honeywell shall deliver proof of such recording, with page and book numbers, to the Trustees, within thirty (30) days of recording.  The Trustees have informed Honeywell that the Trustees and the City of Buffalo have agreed to the form of the CER attached as Appendix E.

19. **Treatment of the Affected Property and the Protected Property During Intervening Time Period and Access to other CSXT Property**.

a. As of the Date of Lodging of this Consent Decree, and prior to recording a Trustee approved CER on the CSXT City Ship Canal Property and Concrete Central Property, the Parties agree to the following: (1) CSXT shall not use the Protected Property that is subject to approved CERs in a manner that is inconsistent with the Restoration Work planned for such properties, except this provision is not intended to prevent CSXT from removing the iron rails that remain on the CSXT City Ship Canal Protected Property, or continuing to use its reserved rights in the Properties; (2) provided  Plaintiff  executes and complies with a Right of Entry Agreement governing the proposed Restoration Work in a form substantially similar to that in Appendix H for Ship Canal West, CSXT shall not interfere with Plaintiffs' performance of Restoration Work on the Ship Canal Protected Property or Affected Property or interfere with Plaintiffs' limited right of access to enable Plaintiffs to perform such work;  and (3) provided Plaintiff executes and complies with the relevant Private Crossing Agreement or Right of Entry Agreement governing the proposed Restoration Work in a form substantially similar to that in Appendix I for Concrete Central, CSXT shall not interfere with Plaintiffs' limited right of access across its property in designated locations to enable Plaintiffs to perform the proposed Restoration Work on the Concrete Central property.

b. Upon execution of the CSXT CERs attached as Appendix C., Plaintiffs may begin undertaking the Restoration Work on any Protected Property or the Affected Property, subject to the limitations on such activities contained within each CER, or within the

Right of Entry Agreement [or Private Crossing Agreement] referenced in this Consent Decree.

20. Subject to Paragraphs 16. a and c, after review of any proposed CER submitted pursuant to Paragraph 16, if required, the Trustees shall in writing: (a) approve the CER ("Trustee-Approved CER"); (b) approve part of the CER, with conditions; or (c) disapprove the CER.

21. If the submission is disapproved in whole or in part pursuant to Paragraph 20(b) or (c), the landowner submitting the CER ("the submittee") shall, within thirty (30) days or such other time as the parties to the dispute agree to in writing, correct all deficiencies and resubmit the CER, for approval, in accordance with the preceding Paragraphs.

22. If a resubmitted CER, or portion thereof, is disapproved in whole or in part, the Trustees may again require the submittee to correct any deficiencies, in accordance with the preceding Paragraph, or may themselves correct any deficiencies, subject to the submittee's right to invoke Dispute Resolution and the right of the Trustees to seek stipulated penalties and other relief.

23. Any stipulated penalties applicable to any original submission of a CER, as provided in Section XIII (Stipulated Penalties), shall accrue during the thirty (30) day period or other specified period, but shall not be payable unless the resubmission is untimely or is disapproved in whole or in part.

24. Each approved CER, or any portion thereof, shall be incorporated into and enforceable under this Consent Decree.

## IX.   ACCESS AND CER COORDINATORS

25. a. Upon recording of a CER, Plaintiffs shall have the same access rights, and be subject to the same access limitations, as provided to the Grantee under the CER, including the obligation to obtain of Right of Entry Agreement to be granted additional access under certain conditions.

  b. Within thirty (30) days of the Effective Date, the Plaintiffs and CSXT shall notify each other, in writing, of the name, address, and telephone number of their respective designated coordinator(s) for access and CER related work, with respect to the CSXT City Ship Canal Property.  If a coordinator initially designated is changed, the identity of the successor shall be provided at least five (5) working days before the change occurs, unless impracticable.  In no event shall notification be given later than the actual day the change is made unless impracticable.  The coordinator(s) shall have sufficient expertise to adequately oversee all aspects of the work or access that they are to coordinate.

26. a. Subject to Paragraphs 19 and 27, upon execution of the Right of Entry Agreement substantially in the form contained at Appendix C, CSXT shall provide Plaintiffs, their contractors, and subcontractors, with all the same rights of access to the Protected Property and/or to the Affected Property as provided to Grantee in the CERs attached as Appendix C., and each shall be subject to the limitations relating to such access contained in the CER and Right of Entry Agreement.

14

b. Plaintiffs acknowledge herein and shall ensure that its contractors and subcontractors acknowledge in any written contract that CSXT makes no guarantee, representation or warranty regarding the physical or environmental condition of either the Protected Property or the Affected Property, and CSXT expressly disclaims any and all obligation and liability to Plaintiffs, their contractors, and subcontractors,  regarding any defects which may exist with respect to the condition of the Protected Property and/or Affected Property.   Subject to the aforementioned limitations, those in Paragraph 27 below and the terms of each applicable CER or Right of Entry Agreement, access is authorized for the following:

> (a) Planning, implementing and monitoring the Restoration Work on Affected Property, including invasive species control and native species planting on the eastern shore of the City Ship Canal property;

> (b) Verifying any data or information submitted to the Trustees;

> (c) Obtaining samples for the purposes of implementing Restoration Work;

> (d) Determining whether the Protected Property is being used in a manner that is prohibited or restricted under the Consent Decree;

> (e) Implementing, monitoring, maintaining, reporting on, and enforcing any CER; and

> (f) Conducting any activity related to this Consent Decree.

27.   In the event that Plaintiffs, their contractors and subcontractors require access to any Affected Property or Protected Property across any track with personnel or equipment, for purposes of this Consent Decree, such access shall be governed by a Private Crossing Agreement or other written access agreement, depending on the nature and duration of the access, as attached as Appendix C for the respective Affected Properties.

28.   Obligations of Plaintiffs and CSXT during the performance of Restoration Work:

a.   the Plaintiffs shall install and maintain, at their own expense, for twenty years, appropriate signage at the north and south perimeters of the Protected Property of the Ship Canal to advise the public of the limits to the use of such Protected Property.  This provision is intended to survive the termination of the Consent Decree.

b.   the Plaintiffs shall install a gate and maintain it for twenty years, with dual locks, across the southern boundary line of the Protected Property of the Ship Canal, as depicted in Exhibit 1 of the Ship Canal CER, and provide a key or code combination to CSXT.  This provision is intended to survive the termination of the Consent Decree.

c.   the Plaintiffs shall not disturb the existing drainage on the Protected Property so as not to impair adjacent railroad operating property drainage and shall not redirect or increase the quantity or velocity of surface water runoff or streams into CSXT's drainage system or upon any adjacent railroad operating property or other lands and facilities of CSXT.

d.  Plaintiffs shall not introduce, foster, or release any threatened or endangered species of plant or wildlife, or intentionally create or enhance habitat for the purpose of attracting or benefitting any such species, on the Protected Property.

e.  Plaintiffs agree that the Designated Paths on the Ship Canal Protected Property will provide protective cover, such as pavement or collectively 6 inches of gravel, wood chips, or soil, or some other similarly protective cover.

f.  Neither Plaintiffs' nor its contractors or subcontractors shall operate any equipment at a distance closer than fifty (50) feet from the center of any track, without the prior approval of the CSXT Representative.  CSXT shall mark any such fifty (50) foot boundary near any work area so as to be clearly visible to Plaintiffs and their contractors or subcontractors, and Plaintiffs shall ensure that their contractors or subcontractors install a temporary fence or stake line which shall remain in place for the entirety of any Restoration Work.

g.  Plaintiffs and its contractors, subcontractors and consultants must comply with CSXT's reasonable safety requirements as required in the applicable Right of Entry Agreement or Private Crossing Agreement.

h.  CSXT is not responsible for the costs of replacement or repair of any injured or damaged Restoration Work on the Protected Property or Affected Property if CSXT did not cause such injury or damage.

i.  CSXT shall remove the iron rails located within the property covered by the CSXT City Ship Canal CER, but it is not responsible under this Consent Decree for the removal of any railroad ties located on that property or any other scrap material, or equipment or infrastructure in any other location.

## X.  FORCE MAJEURE

29.  "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of CSXT or Honeywell, and/or of any entity controlled by such Party that delays or prevents the performance of any obligation under this Consent Decree despite such Party's best efforts to fulfill the obligation.  The requirement that CSXT or Honeywell exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure and best efforts to address the effects of any potential force majeure (a) as it is occurring and (b) following the potential force majeure such that the delay and any adverse effects of the delay are minimized to the greatest extent possible.  "Force majeure" does not include financial inability to complete the work under this Consent Decree or comply with any obligation of this Consent Decree.

30.  If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree for which any Party intends or may intend to assert a claim of force majeure, such Party shall notify the Trustees' project coordinator orally, within ten (10)  days of when such Party first knew that the event might cause a delay.  Within fourteen (14) days thereafter, such Party shall provide in writing to the Trustees an explanation and description of the reasons for the delay; the anticipated duration of the

16

delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; the rationale for attributing such delay to a force majeure; and a statement as to whether, in the opinion of such Party, such event may cause or contribute to an endangerment to public health or welfare, or the environment.  Such Party shall include with any notice all available documentation supporting its claim that the delay was attributable to a force majeure.  Such Party shall be deemed to know of any circumstance of which such Party, any entity controlled by such Party, or such Party's contractors or subcontractors knew or should have known.  Failure to comply with the above requirements regarding an event shall preclude such Party from asserting any claim of force majeure regarding that event, provided, however, that if the Trustees, despite the late or incomplete notice, are able to assess to their satisfaction whether the event is a force majeure under ¶ 29 and whether such Party has exercised its best efforts under ¶ 29, the Trustees may, in their unreviewable discretion, excuse in writing such Party's failure to submit timely or complete notices under this Paragraph.

31.   If the Trustees agree that the delay or anticipated delay is attributable to a force majeure, the time for performance of the obligations under this Consent Decree that are affected by the force majeure will be extended by the Trustees for such time as is necessary to complete those obligations.  An extension of the time for performance of the obligations affected by the force majeure shall not, of itself, extend the time for performance of any other obligation.  If the Trustees do not agree that the delay or anticipated delay has been or will be caused by a force majeure, the Trustees will notify such Party in writing of their decision.  If the Trustees agree that the delay is attributable to a force majeure, the Trustees will notify such Party in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure.

32.   If such Party elects to invoke the dispute resolution procedures set forth in Section XI (Dispute Resolution) regarding the Trustees' decision, it shall do so no later than fifteen (15) days after receipt of the Trustees' notice.  In any such proceeding, such Party shall have the burden of proving that the delay or anticipated delay has been or will be caused by a force majeure, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that such Party complied with the requirements of ¶¶ 29 and 30.  If such Party carries this burden, the delay at issue shall be deemed not to be a violation by such Party of the affected obligation of this Consent Decree.

## XI.   DISPUTE RESOLUTION

33.   Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve any disputes between or among the Parties arising under or with this Consent Decree;  provided, however, that the provisions set forth in this Section shall not apply to proceedings to enforce obligations that have not been disputed in accordance with this Section, and further provided that nothing in this Consent Decree shall be construed to authorize CSXT or Honeywell to dispute any action or determination of the Trustees in selecting or

17

carrying out any natural resource restoration activities or in managing or expending funds under this Decree.

34. The Trustees' determinations made by the Trustees under Section VII (Trustee-Sponsored Restoration Projects) and Section XII (Stipulated Penalties), shall be final and binding unless within fifteen (15) business days of receipt of the Trustees' notice of disapproval of a submittal or revised submittal, or notice of an above-listed determination, the Party responsible for the submission invokes dispute resolution procedures of this Section by sending the Trustees a written notice specifying the nature of the dispute and requested relief ("Notice of Dispute").

35. **Informal Dispute Resolution**.  Any dispute regarding this Consent Decree shall in the first instance be the subject of informal negotiations between the Trustees and the Party invoking the dispute.  The period for informal negotiations shall not exceed twenty-one (21) days from the time the dispute arises, unless it is modified by written agreement of the disputing parties.  A dispute shall be considered to have arisen when the disputing Party sends the Trustees a written Notice of Dispute.

36. **Formal Dispute Resolution**.

a. In the event that the disputing parties cannot resolve a dispute by informal negotiations under the preceding Paragraph, then the position advanced by the Trustees shall be considered final and binding unless, within twenty-one (21) days after the conclusion of the informal negotiation period, the disputing Party invokes the formal dispute resolution procedures of this Section by serving on the Trustees a written Statement of Position on the matter in dispute, including, but not limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the disputing Party.

b. Within twenty-one (21) days after receipt of such disputing Party's Statement of Position, the Trustees will serve on such disputing Party their written Statement of Position, including, but not limited to, any factual data, analysis, or opinion supporting that position and all supporting documentation relied upon by the Trustees.

c. An administrative record of the dispute shall be maintained by the Trustees and shall contain all Statements of Position, including supporting documentation, submitted pursuant to this Section.

d. The Trustees and such disputing Party each shall identify Formal Dispute Resolution Representatives who shall meet to discuss the matter in dispute at the earliest available opportunity and will work in good faith to resolve the matter in dispute.  If the disputing parties fail to resolve the dispute within twenty-one (21) days after the initial meeting of the Formal Dispute Resolution Representatives, then the position advanced by the Trustees in their Statement of Position shall be considered binding upon such disputing Party, subject to any agreements the Formal Dispute Resolution Representatives may have reached on one or more issues and further subject to such disputing Party's right to seek judicial review pursuant to the following subparagraph.  In such event the Trustees shall within five (5) days of the conclusion of the formal dispute resolution process notify such disputing Party in writing that the formal dispute resolution process has concluded.

Such disputing Party may seek judicial review of Trustees' Statement of Position (as modified by any agreements the Formal Dispute Resolution Representatives may have reached) pursuant to the following subparagraphs.

e.   Any matter in dispute shall be reviewable by this Court, provided that a motion for judicial review of the decision is filed by the disputing Party with the Court and served on all other Parties within twenty-one (21) days after receipt of the Trustees' letter notifying the disputing party of the conclusion of the formal dispute resolution process. The motion shall include a description of the matter in dispute, the efforts made by the disputing parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of this Consent Decree.  The disputing parties shall jointly move the Court to establish a schedule under which the Plaintiffs may file a response to such disputing Party's motion within twenty-one (21) days of receipt of the motion, and such disputing Party may file a reply brief within five (5) days of receipt of the response.  If the Court does not grant the motion for such a schedule, then the disputing parties shall file the response and reply in accordance with the schedule set forth in the Local Rules for the Western District of New York.

f.   Standard of Review.

(1)   Disputes Concerning Matters Accorded Record Review. Except as otherwise provided in this Consent Decree, in any dispute brought under Paragraph 33 pertaining to: (1) the approval of CERs; (2) the Trustees' implementation of Trustee-sponsored Restoration Projects under Section VII; and (3) all other disputes that are accorded review on the administrative record under applicable principles of administrative law shall be conducted as follows: CSXT and Honeywell shall have the burden of demonstrating, based on the administrative record, that the administrative resolution of the dispute by the Formal Dispute Resolution Representatives, or their designees, is arbitrary and capricious or otherwise not in accordance with law.

(2)   Other Disputes. Except as otherwise provided in this Consent Decree, in any other dispute the Disputing Party shall bear the burden of demonstrating that its position complies with this Consent Decree.

g.   The foregoing notwithstanding, Plaintiffs, CSXT and Honeywell acknowledge that disputes may arise that require resolution on an expedited basis.  In such cases, such Parties shall agree on an expedited schedule or, absent prompt agreement, the requesting Party may petition the Court for imposition of an expedited schedule.

37.   The invocation of dispute resolution procedures under this Section does not extend, postpone, or affect in any way any obligation of such disputing Party under this Consent Decree, unless the Trustees agree or the Court determines otherwise.  Stipulated penalties with respect to the disputed matter shall continue to accrue, but payment shall be stayed pending resolution of the dispute, as provided in Paragraph 41.  Notwithstanding the stay of payment, stipulated penalties shall accrue from the first day of noncompliance with any applicable provision of this Consent Decree.  In the event that such disputing Party does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section XII (Stipulated Penalties).

# XII.   STIPULATED PENALTIES

**38.**   CSXT and Honeywell shall be liable for stipulated penalties in the amounts set forth in Paragraphs 39 and 40 to the Plaintiffs for failure to comply with the requirements of this Consent Decree specified below, unless excused under Section X (Force Majeure), or prevailing following the Dispute Resolution procedures in this Decree.  "Compliance" by CSXT and Honeywell shall include completion of all activities and obligations, including payments, required under this Consent Decree, or any CERs approved under this Consent Decree, in accordance with all applicable requirements of law, this Consent Decree, and any CERs approved under this Consent Decree. Each Party is only liable for stipulated penalties associated with its own failure to comply with the requirements of this Consent Decree and not for the failure of any other Party.

**39.**   **Stipulated Penalty Amounts – Payments**.  In addition to Interest under Paragraph 12, the following stipulated penalties shall accrue per violation per day for each such failure to make any payment required pursuant to Section VI (Payments by Honeywell):

| Period of Noncompliance | Penalty Per Violation Per Day |
|---|---|
| 1st through 14th day | $500 |
| 15th through 30th day | $1,000 |
| 31st day and beyond | $2,000 |

**40.**   **Stipulated Penalty Amounts – CERs**.  The following stipulated penalties shall accrue per violation per day for CSXT's failure to submit timely or adequate CERs pursuant to the Consent Decree and for CSXT's and/or Honeywell's failure to timely record approved CERs pursuant to the Consent Decree, except that stipulated penalties shall not apply for (i) delays in such recording process attributable to the Covid-19 pandemic, including delays in the ability to complete title searches and obtain title insurance, and (ii) delays due to the City's failure to execute the CERs in recordable form provided that Honeywell exercises reasonable efforts to obtain the City's cooperation.

| Period of Noncompliance | Penalty Per Violation Per Day |
|---|---|
| 1st through 14th day | $500 |
| 15th through 30th day | $1,000 |
| 31st day and beyond | $2,000 |

**41.**   All penalties shall begin to accrue on the Day after performance or payment is due, or a violation occurs, whichever is applicable, and shall continue to accrue through the final date of satisfactory performance or payment, or until the violations ceases.  However, stipulated penalties shall not accrue: with respect to judicial review by this Court of any dispute under Section XI (Dispute Resolution), during the period, if any, beginning on the 31st day after the Court's receipt of the final submission regarding the dispute until the date that the Court issues a final decision regarding such dispute.  Nothing in this Consent Decree shall prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree.

**42.**   Any Party owing any stipulated penalty shall pay such stipulated penalties to the Plaintiffs within thirty (30) Days of a written demand by any Plaintiff, unless such Party invokes the

Dispute Resolution procedures under Section XI (Dispute Resolution) within the 30-Day period.  The Plaintiff making a demand for payment of a stipulated penalty shall simultaneously send a copy of the demand to the other Plaintiffs.  Penalties shall accrue as provided in the preceding Paragraph regardless of whether the Plaintiffs have notified the Party of a violation or made a demand for payment.

43. Any Party owing any stipulated penalty to the United States shall pay such stipulated penalties to the United States at https://www.pay.gov using the link for "EPA Miscellaneous Payments Cincinnati Finance Center," including references to: the DJ number, 90-11-3-08780; the case name; and the purpose of the payment.  The Party making the payment shall provide confirmation notice of its payment as required by Paragraph 11.

44. Penalties shall continue to accrue as provided in Paragraph 38 during any dispute resolution period, but need not be paid until the following:

a. If the dispute is resolved by agreement of the parties or by a decision of the Trustees that is not appealed to this Court, accrued penalties determined to be owed shall be paid to the Trustees within thirty (30) days after the agreement or the receipt of the Trustees' decision;

b. If the dispute is appealed to this Court and the Plaintiffs prevail in whole or in part, the applicable Party shall pay all accrued penalties determined by the Court to be owed to the Plaintiffs within sixty (60) days after receipt of the Court's decision or order, except as provided in Paragraph 44.c;

c. If the District Court's decision is appealed by any disputing Party, the disputing Party shall pay all accrued penalties determined by the District Court to be owed to the Trustees into a court registry investment system account ("CRIS Account") or an interest-bearing escrow account, established at a duly chartered bank or trust company that is insured by the FDIC, within sixty (60) days after receipt of the Court's decision or order. Penalties shall be paid into this account as they continue to accrue, at least every sixty (60) days. Within fifteen (15) days after receipt of the final appellate court decision, any disputing party may request that the clerk of Court for the CRIS account, or the escrow agent, pay the balance of the account to the Plaintiffs or to the disputing Party to the extent that they prevail.

45. If a Party fails to pay stipulated penalties when due, such Party shall pay Interest on the unpaid stipulated penalties as follows: (a) if such Party has timely invoked dispute resolution such that the obligation to pay stipulated penalties has been stayed pending the outcome of dispute resolution, Interest shall accrue from the date stipulated penalties are due pursuant to Paragraph 42 until the date of payment; and (b) if such Party fails to timely invoke dispute resolution, Interest shall accrue from the date of demand under Paragraph 42 until the date of payment.  If such Party fails to pay stipulated penalties and Interest when due, the United States, the State, or the Tuscarora Nation may institute proceedings to collect the penalties and Interest.

46.  The payment of penalties and Interest, if any, shall not alter in any way the Parties' obligations to make any payment required under this Consent Decree or to perform any other requirement of this Consent Decree.

47.  Except as provided in Section XIII (Covenant and Reservations of Rights by Plaintiffs), nothing in this Consent Decree shall be construed as prohibiting, altering, or in any way limiting the ability of the Plaintiffs to seek any other remedies or sanctions available by virtue of any Party's violation of this Consent Decree or of the statutes and regulations upon which it is based, including, but not limited to, penalties pursuant to Section 122(*l*) of CERCLA, 42 U.S.C. § 9622(*l*), provided, however, that the Plaintiffs shall not seek civil penalties pursuant to Section 122(*l*) of CERCLA for any violation for which a stipulated penalty is provided in this Consent Decree, except in the case of a willful violation of this Consent Decree.

48.  Notwithstanding any other provision of this Section, Plaintiffs may, in their unreviewable discretion, waive any portion of stipulated penalties that have accrued pursuant to this Consent Decree.  For stipulated penalties accruing pursuant to Paragraph 35, the Plaintiff to whom payment is owed may, in its unreviewable discretion, waive payment of any portion of those stipulated penalties that have accrued pursuant to Paragraph 35.

## XIII.  COVENANT AND RESERVATIONS OF RIGHTS BY PLAINTIFFS

49.  Except as provided in Paragraph 50 (General Reservations of Rights), Paragraph 51 (Special Reservations Regarding Natural Resource Damages), and Paragraph 52 (Conditional Covenants), the United States, the State, and the Tuscarora Nation covenant not to sue or to take administrative action against CSXT and its successors, but only to the extent that the alleged liability of the successor of CSXT is based solely on its status as a successor of CSXT; Honeywell and its successors, but only to the extent that the alleged liability of the successor of Honeywell is based solely on its status as a successor of Honeywell; and Other Settling Parties for Natural Resource Damages as follows:

a.  For Honeywell and the Other Settling Parties, this covenant shall take effect upon the Trustees' receipt of Honeywell's payments pursuant to Paragraph 7 of this Consent Decree;

b.  For CSXT, this covenant shall take effect upon the Effective Date.

As to Honeywell, CSXT, and the City, the above covenant is respectively conditioned upon the satisfactory performance by Honeywell, CSXT, and the City of their respective obligations under, or related to, this Consent Decree, including (1) CSXT's obligation to submit, record, and comply with, Trustee-Approved CERs for the Restoration Work as set forth in the Restoration Plan regarding CSXT's Ship Canal and Concrete Central Properties, (2) the City's compliance with the Trustee-Approved CERs for Houghton Park Property, and the Upstream Parcels; and (3) Honeywell's obligations to make payments under Section VI and Paragraph 17.a. of the Decree and to record the CERs on the Houghton Park and Upstream Parcel properties.  As to the Other Settling Parties, the above covenant is conditioned upon the satisfactory performance by Honeywell of its obligations under this Consent Decree, and the covenant is null and void as to any one of the Other Settling Parties, if such Other Settling Party brings an action against the United

States for any claim set forth in Paragraph 53 of this Consent Decree. These respective covenants extend only to the respective Parties and Other Settling Parties and do not extend to any other person.

50. **General Reservations of Rights**. The United States, the State, and the Tuscarora Nation reserve, and this Consent Decree is without prejudice to, all rights against CSXT and Honeywell and Other Settling Parties with respect to all matters not expressly included within Plaintiffs' covenant in Paragraph 49. Notwithstanding any other provision of this Consent Decree, the United States, the State, and the Tuscarora Nation reserve all rights against CSXT and Honeywell and Other Settling Parties with respect to:

a. liability for failure to meet a requirement of this Consent Decree, including but not limited to failure to timely record the CER(s) as set forth in Paragraph 18;

b. liability for injunctive relief or administrative order enforcement under any federal or State statute;

c. liability under CERCLA Section 107(a)(4)(A), 42 U.S.C. § 9607(a)(4)(A), for costs of removal or remedial action incurred or to be incurred by the United States, the Tuscarora Nation, or State;

d. liability under CERCLA Section 107(a)(4)(D), 42 U.S.C. § 9607(a)(4)(D), for costs of any health assessment or health effects study carried out under 42 U.S.C. § 9604(i);

e. liability for any other damages, or for any other costs incurred or to be incurred by the United States, the State or the Tuscarora Nation, that are not within the definition of Natural Resource Damages;

f. liability arising from the past, present, or future disposal, release, or threat of release of hazardous substances or discharge of oil outside of the Site;

g. liability based on the release of hazardous substances or discharge of oil at the Site from a facility owned or operated by CSXT, Honeywell or Other Settling Parties when such ownership or operation commences and such release occurs after the Date of Lodging of this Consent Decree with this Court and such release does not arise from performance of work required by any federal or state consent decree, any federal or state administrative order, or a federal or state permit or approval regarding the Site, including work required by the Great Lakes National Program Office of USEPA pursuant to the Great Lakes Legacy Act, assuming such work is performed in conformity with the requirements of any such decree, order, approval or permit;

h. liability arising from any CSXT, Honeywell's or Other Settling Parties' transportation, treatment, storage, or disposal, or the arrangement for the transportation, treatment, storage, or disposal of hazardous substances or oil at the Site, after the Date of Lodging of this Consent Decree with this Court that does not arise from the performance of work required by any federal or state consent decree, any federal or state administrative order, or a federal or state permit or approval regarding the Site, including work required by the Great Lakes National Program Office of USEPA pursuant to the Great Lakes Legacy Act,

assuming such work is performed in conformity with the requirements of any such decree, order, permit, or approval; and

i.    criminal liability.

51.   **Special Reservations Regarding Natural Resource Damages**.  Notwithstanding any other provision of this Consent Decree, the United States, the State and the Tuscarora Nation each reserves the right to institute proceedings against CSXT, Honeywell and the Other Settling Parties in this action or in a new action seeking recovery of Natural Resource Damages, based on:  (i) conditions relating to the Site, unknown to the Trustees as of the Date of Lodging of this Consent Decree, that cause or contribute to injury to, destruction of, or loss of Natural Resources ("Unknown Conditions"), or (ii) information received by the Trustees after the Date of Lodging of this Consent Decree which indicates that there is injury to, destruction of, or loss of Natural Resource Damages of a type or future persistence unknown by the Trustees as of the Date of Lodging of this Consent Decree ("New Information").  The following shall not be considered Unknown Conditions or New Information for purposes of this Paragraph:  (i) an increase solely in the Trustees' assessment of a known Natural Resource Damage; and (ii) injury to, destruction of, or loss of Natural Resources at the Site, arising from the re-exposure, re-suspension, or migration of hazardous substances or oil known by the Trustees to have been released into or at the Site prior to the Date of Lodging where such re-exposure, re-suspension or migration results from  natural causes or causes other than the Settling Defendants.  For purposes of this Paragraph, the conditions and information known to the Trustees on the Date of Lodging of this Consent Decree shall include the conditions and information set forth in any sampling data and other data and information in the possession or control of the United States, the State, or the Tuscarora Nation concerning the Site at any time prior to the Date of Lodging of this Consent Decree; and/or all analyses, diagrams, maps, reports, and surveys performed at the Site by or on behalf of the United States, the State, or the Tuscarora Nation.

52.   **Conditional Covenant.**  Notwithstanding the foregoing, the United States, the State, and the Tuscarora Nation each reserve its rights to assert and pursue all claims, causes of action, and defenses relating to Natural Resource Damages against any person in the event such person first asserts, and for so long as such person pursues, any claim or cause of action against the United States, the State, or the Tuscarora Nation relating to Natural Resource Damages at the Site.

## XIV.  COVENANTS BY CSXT AND HONEYWELL

53.   **Covenants by CSXT and Honeywell**.  CSXT and Honeywell each covenant not to sue and agree not to assert any claims or causes of action against the United States, the State, or the Tuscarora Nation, or their contractors or employees, including without limitation in their capacity as Trustees, with respect to Natural Resource Damages, for any liability for costs incurred in connection with any response action undertaken at the Site under the Great Lakes Legacy Act, 33 U.S.C. §1268, *et seq.,* or this Consent Decree, including, but not limited to:

a.    any direct or indirect claim for reimbursement from the Hazardous Substance Superfund through CERCLA §§ 106(b)(2), 107, 111, 112 or 113, 42 U.S.C. §§ 9606(b)(2), 9607, 9611, 9612, or 9613, the Oil Spill Liability Trust Fund established pursuant to 26 U.S.C. §§ 4611 and 9509, or any other provision of law;

b.    any claims under CERCLA §§ 107 or 113, 42 U.S.C. §§ 9607 or 9613, relating to Natural Resource Damages; or

c.    any claims arising out of activities related to restoration projects, including without limitation, claims based on the Trustees' selection of restoration projects, implementation and oversight of restoration projects, and/or approval of the CERs for such activities.

These covenants not to sue shall not apply in the event that one or more of the United States, the State, or the Tuscarora Nation, including without limitation in their capacity as Trustees, takes administrative action, issues administrative findings and orders, or brings a cause of action against CSXT or Honeywell pursuant to the reservations set forth in Paragraphs 47, 50, 51 and 52, above, but only with respect to such entity, and to the same extent and for the same matters, transactions, or occurrences as are raised in the claims asserted by the respective entity pursuant to such reservations.

54.    Nothing in this Consent Decree shall be deemed to constitute approval or preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. § 300.700(d).

## XV.    EFFECT OF SETTLEMENT; CONTRIBUTION PROTECTION

55.    Except as provided in Paragraph 49.(a) (Covenant as to Other Settling Parties), nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree. The Plaintiffs, CSXT and Honeywell each expressly reserves any and all rights (including, but not limited to, pursuant to Section 113 of CERCLA, 42 U.S.C. § 9613), defenses, claims, demands, and causes of action that each such Party may have with respect to any matter, transaction, or occurrence relating in any way to the Site against any person not a Party hereto.

56.    The Parties agree, and by entering this Consent Decree this Court finds, that this Consent Decree constitutes a judicially-approved settlement pursuant to which CSXT, Honeywell and each Other Settling Party has resolved its liability to the United States within the meaning of Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), and is entitled to protection from contribution actions or claims as provided by Section 113(f)(2) of CERCLA, or as may be otherwise provided by law, for the "matters addressed" in this Consent Decree. The "matters addressed" in this Consent Decree are Natural Resource Damages; provided, however, that if the United States, the Tuscarora Nation, or the State exercises rights under Paragraph 52 (Conditional Covenant), or the reservations in Section XIII (Covenant and Reservations of Rights by Plaintiffs), other than in Paragraph 50.a (claims for failure to meet a requirement of the Consent Decree) or Paragraph 50.i (criminal liability), the "matters addressed" in this Consent Decree will no longer include those natural resource damages that are within the scope of the exercised reservation.

57. The Plaintiffs and CSXT and Honeywell agree, and by entering this Consent Decree this Court finds, that the complaint filed by the United States in this action is a civil action within the meaning of Section 113(f)(1) of CERCLA, 42 U.S.C. § 9613(f)(1), and that this Consent Decree constitutes a judicially-approved settlement pursuant to which CSXT and Honeywell and each Other Settling Party has resolved its liability to the United States for Natural Resource Damages within the meaning of Section 113(f)(3)(B) of CERCLA, 42 U.S.C. § 9613(f)(3)(B), subject to the reservations in Paragraph 53.  The contribution protection afforded by this Consent Decree shall take effect:

a. for Honeywell and the Other Settling Parties, upon the Trustees' receipt of the payments set forth in Paragraph 7 of the Consent Decree; and

b. for CSXT, upon the Effective Date.

58. CSXT and Honeywell shall, with respect to any suit or claim brought by it for matters related to this Consent Decree, notify the United States, the State and the Tuscarora Nation in writing no later than sixty (60) days prior to the initiation of such suit or claim.

59. CSXT and Honeywell shall, with respect to any suit or claim brought against it for matters related to this Consent Decree, notify in writing the United States, the State and the Tuscarora Nation within ten (10) days after service of the complaint on such Party.  In addition, each such Party shall notify the United States, the State and the Tuscarora Nation within ten (10) days after service or receipt of any Motion for Summary Judgment and within ten (10) days after receipt of any order from a court setting a case for trial.

60. **Res Judicata and Other Defenses**.  In any subsequent administrative or judicial proceeding initiated by the United States, the State or the Tuscarora Nation for injunctive relief, recovery of response costs or Natural Resource Damages, or other appropriate relief relating to the Site, CSXT and Honeywell shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States, the State or the Tuscarora Nation in the subsequent proceeding were or should have been brought in the instant case; provided, however, that nothing in this Paragraph affects the enforceability of the covenants not to sue set forth in Section XIII (Covenant and Reservations of Rights by Plaintiffs).

## XVI.   RETENTION OF RECORDS

61. Until ten (10) years after CSXT and Honeywell have respectively fully implemented its obligations under this Consent Decree, each such Party shall preserve and retain all non-identical copies of Records (including Records in electronic form) now in its possession or control or that come into its possession or control that relate to its liability under CERCLA with respect to the Site.  In addition, each such Party must retain all Records that relate to the liability of any other person under CERCLA with respect to the Site. Each such Party must also retain, and instruct its contractors and agents to preserve, for the same period of time specified above all non-identical copies of the last draft or final version of any Records (including Records in electronic form) now in its possession or control or that come into its possession or control that relate in any manner to the implementation of the requirements of this Consent Decree, provided, however, that each

26

Party (and its contractors and agents) must retain, in addition, copies of all data generated during the implementation of the requirements of this Consent Decree and not contained in the aforementioned Records required to be retained.  Each of the above record retention requirements shall apply regardless of any corporate retention policy to the contrary.

62.   At the conclusion of this record retention period, each Party shall notify the Trustees at least ninety (90) days prior to the destruction of any such Records, and, upon request by the Trustees, such Party shall deliver any such Records to the Trustees.

63.   CSXT and Honeywell each certify that, to the best of its knowledge and belief, after thorough inquiry, it has not altered, mutilated, discarded, destroyed, or otherwise disposed of any Records (other than identical copies) relating to its potential liability regarding the Site since notification of potential liability by the United States or the State, or the filing of suit against it regarding the Site, and that it has fully complied with any and all federal and state requests for information regarding the Site pursuant to Sections 104(e) and 122(e)(3)(B) of CERCLA, 42 U.S.C. §§ 9604(e) and 9622(e)(3)(B), and state law.

## XVII. NOTICES AND SUBMISSIONS

64.   All approvals, consents, CERs, modifications, notices, notifications, objections, proposals, reports, and requests specified in this Consent Decree must be in writing.  Whenever, under this Consent Decree, notice is required to be given, or a report or other document is required to be sent, by one party below to another, it must be directed to the person(s) specified below at the address(es) specified below.  Any party listed below may change the person and/or address applicable to it by providing notice of such change to all parties listed below.  All notices and submissions shall be considered effective upon receipt, unless otherwise specified.  Written notice by regular mail, or by electronic mail with confirmed receipt, in accordance with this Section satisfies any notice requirement of the Consent Decree.

**As to the United States**:         EES Case Management Unit
                                     U.S. Department of Justice
                                     Environment and Natural Resources Division
                                     P.O. Box 7611
                                     Washington, D.C. 20044-7611
                                     eescdcopy.enrd@usdoj.gov
                                     Re: DJ # 90-11-3-08348/1

                                     Kimberly Gilmore
                                     Office of the Solicitor
                                     U.S. Department of Interior
                                     Three Parkway Center, Suite 385
                                     Pittsburgh, PA 15220
                                     Kimberly.Gilmore@sol.doi.gov

Amy Roe
Wildlife Biologist
U.S. Fish and Wildlife Service
3817 Luker Road
Cortland, New York 13045
Amy_roe@fws.gov

David Stilwell
Field Supervisor
U.S. Fish and Wildlife Service
3817 Luker Road
Cortland, New York 13045
david_stilwell@fws.gov

**As to the State**:

Andrew Guglielmi
Associate Attorney
NYSDEC
625 Broadway, 14th Floor
Albany, NY 12233
Andrew.guglielmi@dec.ny.gov

Jared Reed
Environmental Program Specialist
625 Broadway, 14th Floor
Albany, NY 12233
Jared.reed@dec.ny.gov

**As to the Tuscarora Nation**:

Adam Stolorow
Attorney for the Tuscarora Nation
Sive, Paget & Riesel P.C.
560 Lexington Avenue, 15th Floor
New York, NY 10022
astolorow@sprlaw.com

Chief Leo Henry
2006 Mt. Hope Road
Tuscarora Nation
Via: Lewiston, NY 14092

28

**As to CSXT:**                                    Daniel Schmitt, Esq.
                                                   Senior Counsel
                                                   CSX Transportation, Inc.
                                                   500 Water Street, J150
                                                   Jacksonville, FLA 32202
                                                   Daniel_Schmitt@csx.com

                                                   Kevin Boland, PG.
                                                   Project Coordinator
                                                   500 Water Street, J-915
                                                   Jacksonville, FLA 32202
                                                   Kevin_Boland@csx.com

**As to Honeywell:**                               Richard Galloway
                                                   Honeywell International
                                                   115 Tabor Road
                                                   Morris Plains, New Jersey 07950
                                                   973-455-4640
                                                   Rich.Galloway@Honeywell.com

## XVIII.        RETENTION OF JURISDICTION

65.   This Court retains jurisdiction to modify or enforce the terms and conditions of this
Consent Decree and to resolve disputes arising hereunder as may be necessary or
appropriate for the construction or execution of this Consent Decree.

## XIX.   APPENDICES

66.   The following appendices are attached to and incorporated into this Consent Decree:

"Appendix A" is the Restoration Plan;

"Appendix B" is the list of prior settlors with Honeywell who constitute the "Other
Settling Parties" in this Consent Decree;

"Appendix C" is the draft form of CER for the CSXT properties, including C.1. for the
Concrete Central Property, and C.2. for the City Ship Canal Property, including the
respective general forms of access agreement set forth therein;

"Appendix D" is the Memorandum of Agreement signed by the Trustees;

"Appendix E" is the draft form of the mutually acceptable CER to be recorded on the
City's property known as the undeveloped portion of Houghton Park and the Upstream
Parcels;

"Appendix F" is a map of the Concrete Central Property owned by CSXT, subject to the
CER;

29

"Appendix G" is a map of the Ship Canal Property owned by CSXT, subject to the CER;

"Appendix H" is a proposed form of Right of Entry Agreement for Ship Canal West; and

"Appendix I" is a proposed form of Right of Entry Agreement/Private Crossing Agreement for Concrete Central.

## XX.    MODIFICATION

67.  Any material modification of this Consent Decree shall be made by agreement of all Plaintiffs, CSXT, and Honeywell in writing, and shall not take effect unless approved by the Court.  Any non-material modification to this Consent Decree shall be made by agreement of all Plaintiffs, CSXT and Honeywell and in writing, and shall not take effect until filed with the Court, including any agreement among Plaintiffs, CSXT and Honeywell to substitute properties equivalent in acreage, and habitat value, and located within the Active River Area of the Niagara Greenway Municipal Boundary for the CSXT Protected Properties, if the title work for such Protected Properties reveals complex defects in title that are not practicable to correct, however in no event shall Honeywell be liable or responsible for any costs associated with such substitute properties, including without limitation costs of acquisition or costs of Restoration Work. When a Trustee-Approved CER, as set forth in Appendix E, is recorded on the City's undeveloped portion of Houghton Park and the Upstream Parcels, the City shall be deemed to be one of the Other Settling Parties listed in Appendix B within the meaning of this Consent Decree, without further need for notification or approval by the Court.

68.  Nothing in this Consent Decree shall be deemed to alter the Court's power to enforce, supervise, or approve modifications (if agreed to by the Plaintiffs, CSXT and Honeywell) to this Consent Decree.

## XXI.   LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

69.  This Consent Decree shall be lodged with the Court for at least thirty (30) days for public notice and comment in accordance with 28 C.F.R. § 50.7.  The United States, the State and the Tuscarora Nation reserve the right to withdraw or withhold their consent if the comments regarding the Consent Decree disclose facts or considerations that indicate that the Consent Decree is inappropriate, improper, or inadequate. CSXT and Honeywell consent to the entry of this Consent Decree without further notice.

70.  If for any reason the Court should decline to approve this Consent Decree in the form presented, or if approval and entry is subsequently vacated on appeal of such approval and entry, this agreement is voidable at the sole discretion of any Plaintiff, CSXT or Honeywell and the terms of the agreement may not be used as evidence in any litigation among the Parties.

## XXII. SIGNATORIES/SERVICE

71.  Each undersigned representative of CSXT, Honeywell, the State, the Tuscarora Nation and the Assistant Attorney General for the Environment and Natural Resources Division

of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind such party to this document.

72.   CSXT and Honeywell agree not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree unless the United States has notified them in writing that it no longer supports entry of the Consent Decree.

73.   CSXT and Honeywell shall each identify, on the attached signature page, the name, address, email address, and telephone number of an agent who is authorized to accept service of process by mail or by email on behalf of that party with respect to all matters arising under or relating to this Consent Decree.  Honeywell agrees to accept service in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including, but not limited to, service of a summons.  Honeywell need not file an answer to the complaint in this action unless or until this Court expressly declines to enter this Consent Decree.

## XXIII.        FINAL JUDGMENT

74.   This Consent Decree and its appendices constitute the final, complete, and exclusive agreement and understanding among the Plaintiffs, CSXT and Honeywell regarding the settlement embodied in the Consent Decree.  The Plaintiffs, CSXT and Honeywell acknowledge that there are no representations, agreements, or understandings relating to the settlement other than those expressly contained in this Consent Decree.

75.   Upon entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between and among the United States, the State, the Tuscarora Nation and Honeywell.  The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

SO ORDERED THIS __ DAY OF _____, 2021.

_____
United States District Judge

Signature Page for Consent Decree regarding NRD for the Buffalo River Site

**FOR THE UNITED STATES OF AMERICA:**

TODD KIM
Assistant Attorney General
U.S. Department of Justice
Environment and Natural Resources Division
Washington, D.C. 20530

11/15/21                          /s/ C. A. Fiske
_____                       _____

Dated:                            CATHERINE ADAMS FISKE
                                  Senior Counsel
                                  U.S. Department of Justice
                                  Environment and Natural Resources Division
                                  Environmental Enforcement Section
                                  408 Atlantic Avenue – Suite 236
                                  Boston, MA 02110
                                  (617) 748-3399
                                  Addie.fiske@usdoj.gov

Signature Page for Consent Decree regarding NRD for the Buffalo River

**FOR THE STATE OF NEW YORK**:

11/09/21                           /s/ James C. Woods by caf.
_____                    _____
Dated                                JAMES C. WOODS
                                          Assistant Attorney General
                                          New York State Office of the Attorney General
                                          Environmental Protection Bureau
                                          Albany, New York 12224
                                          (518) 776-2418
                                          Jaimie.Woods@ag.ny.gov

_____                    _____
OF COUNSEL                    THOMAS BERKMAN
                                          Deputy Commissioner and General Counsel
                                          New York State Department of Environmental
                                          Conservation
                                          Albany, New York 12233
                                          (518) 402-8543
                                          thomas.berkman@dec.ny.gov

33

Signature Page for Consent Decree regarding NRD for the Buffalo River

**FOR THE STATE OF NEW YORK**:

_____
Dated

_____
JAMES C. WOODS
Assistant Attorney General
New York State Office of the Attorney General
Environmental Protection Bureau
Albany, New York 12224
(518) 776-2418
Jaimie.Woods@ag.ny.gov

8/30/2021
Dated

_____
THOMAS BERKMAN
Deputy Commissioner and General Counsel
New York State Department of Environmental
Conservation
Albany, New York 12233
(518) 402-8543
thomas.berkman@dec.ny.gov

Signature Page for Consent Decree regarding NRD for the Buffalo River Superfund Site

**FOR THE TUSCARORA NATION**:

9/20/21
Dated

ADAM STOLOROW
Sive, Paget & Reisel P.C.
New York, NY
astolorow@sprlaw.com

34

Signature Page for Consent Decree regarding NRD for the Buffalo River Superfund Site

**FOR HONEYWELL INTERNATIONAL INC.:**

DocuSigned by:

*Van Hook, D. Evan*

44AD6F6BBF55404...

21-Oct-2021

Dated

Name (print): Evan van Hook
Title: Chief Sustainability Officer
Address: 115 Tabor Rd.  Morris Plains, NJ  07950

Agent Authorized to Accept Service
on Behalf of Above-signed Party:

Name (print):   Charles Anthony, Esq.
Title:                 General Counsel, HSEPSS
Company:        Honeywell International Inc.
Address:          300 South Tryon Street. Suite 500/600
                        Charlotte, NC 28202
Phone:            980-279-3070
Email:             Charles.Anthony@Honeywell.com

35

Signature Page for Consent Decree regarding NRD for the Buffalo River Superfund Site

**FOR CSXT CORPORATION:**

_Raghunath S. Chatrathi_

  August 16, 2021
Dated

Name (print):  Raghunath S Chatrathi
Title:              Sr. Dir. PSHE
Address:         500 Water St., J-275
                     Jacksonville, FL 32202

Agent Authorized to Accept Service
on Behalf of Above-signed Party:

Name (print):  Daniel Schmitt, Esq.
Title:              Senior Counsel
Company:       CSX Transportation, Inc.
Address:         500 Water Street, J150
                     Jacksonville, FL 32202
Phone:           904-359-1126
Email:            Daniel_Schmitt@csx.com

36